ELLEN F. ROSENBLUM
Attorney General
DYLAN HALMAN #173679
Senior Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: dylan.hallman@doj.oregon.gov

Attorneys for Defendant Kenneth Ball

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| HAMZA MAHAMMED JAMA,<br><br>  Plaintiff,<br><br>  v.<br><br>KENNETH BALL, Chaplain,<br><br>  Defendant. | Case No. 3:23-cv-01699-MC<br><br>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

## LR 7-1 CERTIFICATE OF CONFERRAL

  Pursuant to Local Rule 7-1(a)(1)(C), the undersigned certifies that he conferred with Plaintiff on January 13, 2025. The parties discussed the nature of this motion, including all grounds on which Defendant seeks summary judgment, but were unable to come to an agreement.

## MOTION

  Plaintiff's claims in this lawsuit arise out of accommodations for Jumu'ah prayer at Deer Ridge Correctional Institution (DRCI) from 2022 to 2023. (Am. Compl., Dkt. #9). Plaintiff

Page 1 -   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
   DH2/ls8/97965020
                Department of Justice
                100 SW Market Street
                Portland, OR 97201
          (971) 673-1880 / Fax: (971) 673-5000

Hamza Mahammed Jama is a former ODOC adult in custody (AIC). He was housed at DRCI from March 31, 2021 through November 30, 2023, and has since released from custody.

Plaintiff alleges that Chaplain Ball failed to provide a sufficiently clean area for Muslim AICs to participate in the Jumu'ah prayer. (*See id.* at ¶¶ 6-17). Specifically, Plaintiff alleges that the room designated for the Jumu'ah prayer was dirty, and that Chaplain Ball did not take sufficient steps to remedy its dirtiness. (*Id.*). Plaintiff also alleges that the Jumu'ah prayer was often canceled. (*See id.* at ¶¶ 18-22).

Based on these allegations, Plaintiff brings four claims in this case. First and second, Plaintiff brings a claim under the First Amendment, alleging that Chaplain Ball violated both the Free Exercise Clause and the Establishment Clause. (*Id.* at pp. 18-20). Third, Plaintiff brings a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA). (*Id.*). Fourth, Plaintiff brings a claim under the Fourteenth Amendment, alleging that Chaplain Ball violated the Equal Protection Clause. (*Id.* at pp. 20-21). Plaintiff is seeking money damages (*id.* at pp. 22-23), "declaratory relief" (*id.* at p. 2), and injunctive relief (*id.* at pp. 21-22).

Defendant moves for summary judgment on five grounds: (1) Plaintiff's claims for declaratory and injunctive relief are mooted by his release from custody; (2) Plaintiff's RLUIPA claim is mooted by his release from custody; (3) Chaplain Ball's conduct did not infringe Plaintiff's constitutional rights; (4) Chaplain Ball is entitled to qualified immunity from money damages; and (5) Plaintiff has not alleged sufficient facts to support the damages he seeks in his Amended Complaint.

In support of this motion, Defendant relies on the below memorandum of law, as well as the declarations of Kenneth Ball and Miguel Melendez.

Page 2 -    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
        DH2/ls8/97965020
                            Department of Justice
                            100 SW Market Street
                            Portland, OR 97201
                            (971) 673-1880 / Fax: (971) 673-5000

# MEMORANDUM OF LAW

I. **Statement of Facts.**

    A. **Plaintiff's release from custody.**

Mr. Jama was an AIC housed at DRCI from March 31, 2021 through November 30, 2023. (Melendez Decl., Ex. 1, p. 1). Mr. Jama was released from ODOC custody on January 3, 2025. (*Id.*).

    B. **ODOC religious services rules.**

ODOC's rules governing religious services for AICs are set forth in OAR Chapter 291, Division 143, Religious Services (AIC). (Ball Decl., Ex. 1).

Under OAR 291-143-0070(1), "A chaplain in each Department of Corrections facility is responsible for coordination and facilitation of inmate religious activities." (*Id.* at Ex. 1, p. 2). OAR 291-143-0070(4) provides:

> If a chaplain is not qualified to lead a particular religious activity and an approved volunteer is not available, the chaplain or designee, with the assistance of the Religious Services administrator or assistant administrator or others as needed, will:
>
> (a)    Seek out and invite a qualified individual from the community to conduct the religious activity as a religious volunteer; or
>
> (b)    Work with a religious representative to provide when possible alternative means for the conduct of the requested activity in a manner that is consistent with department rules and facility procedures. Alternative means may include, when determined appropriate by the chaplain, use of a script, liturgy, audio, video, or other available media.
>
> (c)    The chaplain will determine whether an approved activity will be accommodated in the context of a group activity or limited to individual practice, based on the availability of staff or volunteer resources.

(*Id.* at Ex. 1, p. 2).

Within ODOC, AICs are not permitted to lead religious activities. The rules provide:

> Inmates shall not be permitted to direct, lead, or conduct other inmates in religious activities. If a chaplain or a qualified religious volunteer approved by the department is unavailable to direct, lead, or conduct an approved religious activity requested by an inmate, an alternative means for the activity is not

Page 3 -    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
DH2/ls8/97965020

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

acquired, the inmate's request will be denied until such time as a qualified religious volunteer or alternative means of accommodation becomes available.

(*Id.* at Ex. 1, p. 2 (OAR 291-143-0070(5))).

ODOC's rules prohibit AICs from directing, leading, or conducting religious services for other AICs for reasons of institutional security. (Bell Decl., ¶ 9). If an AIC were permitted to lead other AICs in religious services, uneven power dynamics and social hierarchies could develop that could put AICs at risk. (*Id.*). In addition, there is a risk that AICs could misrepresent faith traditions to other AICs if religious services were conducted outside the presence of chaplains or approved volunteers. (*Id.*).

Under the rules, each prison's functional unit manager is responsible for designating areas of the prison that may be used for religious services. OAR 291-143-0090 provides: "The functional unit manager of each facility shall designate areas of sufficient size and quantity appropriate for the conduct of approved religious activities." (*Id.* at Ex. 1, p. 3).

    **C.**    **DRCI religious services.**

        **1.**    **Accommodations for DRCI AICs when the Chapel was closed.**

DRCI had one chaplain at all times relevant to Plaintiff's claims, the defendant, Kenneth Ball. Although Chaplain Ball consistently tried to find an Imam or volunteer willing to come to DRCI to serve DRCI's Muslim AICs, he was unable to find one during his tenure. (*Id.* at ¶ 14). To assist Chaplain Ball in facilitating the Jumu'ah prayer, he sought the guidance of a volunteer at the Oregon State Penitentiary, Imam Mohammed Salem Siala. (*Id.*). Imam Siala provided Chaplain Ball with the text (or "Khutba") via e-mail, which Chaplain Ball then printed and provided to the AICs attending Jumu'ah prayer. (*Id.*).

When Chaplain Ball was available, he directly supervised the Jumu'ah prayer. (*Id.* at ¶ 15). When he was unavailable, he asked one of the non-Islamic volunteers to supervise the Jumu'ah prayer. (*Id.*). When he was unavailable and no volunteer was available, he ensured the Khutba was delivered to the AICs for them to pray individually in their cell. (*Id.*). Chaplain Ball spoke with Imam Siala regarding the sufficiency of this arrangement, and Imam Siala assured

Page 4 -   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
    DH2/ls8/97965020
                      Department of Justice
                      100 SW Market Street
                      Portland, OR 97201
                      (971) 673-1880 / Fax: (971) 673-5000

him it was an acceptable arrangement under the circumstances. (*Id.* at ¶ 16). Regardless, it was uncommon during Chaplain Ball's tenure for the AICs to be limited to individual prayer in their cells. (*Id.* at ¶ 17).

### 2. The area designated for Jumu'ah prayer.

During the relevant time, the functional unit manager designated either the Chapel or Room N123 as the area of DRCI for AICs to participate in the Jumu'ah prayer. (*Id.* at ¶ 19).

The Jumu'ah prayer was held each Friday afternoon from 11:45am to 1:00pm. (*Id.* at ¶ 12). To prepare for the Jumu'ah prayer, Chaplain Ball directed the clerks employed by Religious Services to clean the area. (*Id.* at ¶¶ 20-21). As to the Chapel, Chaplain Ball directed the clerks to vacuum the carpet and disinfect all hard surfaces every Thursday. (*Id.* at ¶ 20). As to Room N123, Chaplain Ball directed the clerks to sweep and mop the linoleum floor every Thursday. (*Id.* at ¶ 21). Chaplain Ball's goal was to ensure that those AICs participating in the Jumu'ah prayer would be able to do so without defiling their prayer rugs. (*Id.*).

## II. Summary Judgment Standard.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is for the moving party to point out the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once that initial burden is satisfied, the burden shifts to the non-movant to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id*. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322. To defeat summary judgment, a non-moving party must do more "than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric*

Page 5 - DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
DH2/ls8/97965020

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id*. at 587.

### III. Legal Argument.

Defendant moves for summary judgment on five grounds: (A) Plaintiff's claims for declaratory and injunctive relief are mooted by his release from custody; (B) Plaintiff's RLUIPA claim is mooted by his release from custody; (C) Chaplain Ball's conduct did not infringe Plaintiff's constitutional rights; (D) Chaplain Ball is entitled to qualified immunity from money damages; and (E) Plaintiff has not alleged sufficient facts to support the damages he seeks in his Amended Complaint.

#### A. Plaintiff's claims for declaratory and injunctive relief are mooted by his release from custody.

Because Plaintiff has released from ODOC custody and there is no reasonable expectation or demonstrated probability that he will again be subjected to the prison conditions from which he seeks injunctive relief, his claims for injunctive relief must be dismissed as moot. *Dilley v. Gunn*, 64 F.3d 1365, 1368-69 (9th Cir. 1995); *see also Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012) (same for claims for declaratory relief). Plaintiff no longer has a legally cognizable interest in the outcome of this case:

> "Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim. Any declaratory or injunctive relief ordered in the inmate's favor in such situations would have no practical impact on the inmate's rights and would not redress in any way the injury he originally asserted. And the [released] inmate has no further need for such declaratory or injunctive relief, for he is free of the policy or practice that provoked his lawsuit in the first place."

*Alvarez*, 667 F.3d at 1064 (quoting *Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007)).

Thus, Plaintiff's release moots his claims for declaratory and injunctive relief.

Page 6 -   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
DH2/ls8/97965020
Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**B.    Plaintiff's RLUIPA claim is mooted by his release from custody.**

RLUIPA does not authorize suits for money damages against state employees. *Sossamon v. Texas*, 563 U.S. 277, 293 (2011); *see also Alvarez*, 667 F.3d at 1063 ("money damages under RLUIPA are not available against states because of their sovereign immunity"); *Haight v. Thompson*, 763 F.3d 554, 568 (6th Cir. 2014) (affirming the district court's dismissal of a plaintiff's money damages claims against state prison officials in both their official and individual capacities because such claims were not permitted under RLUIPA).

Plaintiff's RLUIPA claim cannot move forward due to his release from custody because RLUIPA does not authorize suits for money damages against state employees, and—for the reasons discussed directly above—plaintiff's release from custody moots his claims for declaratory and injunctive relief. See *Alvarez*, 667 F.3d at 1066 (affirming the district court's dismissal of the plaintiff's RLUIPA claims because money damages were barred and declaratory and injunctive relief claims were mooted by the plaintiff's release from custody).

**C.    Chaplain Ball did not infringe Plaintiff's constitutional rights.**

    **1.    Chaplain Ball did not violate the First Amendment's Establishment Clause.**

Plaintiff alleges that Chaplain Ball violated the First Amendment's Establishment Clause by failing to accommodate Jumu'ah prayer, failing to provide an Imam or volunteer to oversee the Jumu'ah prayer, and failing to provide a clean place for the Jumu'ah prayer. (Am. Compl., Dkt. #9, ¶¶ 37-40, 43).

The Establishment Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion . . . ." The Supreme Court has stated, "This Court has long recognized that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause." *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 144-45 (1987).

Moreover, "in commanding neutrality the Religious Clauses do not require the government to be oblivious to impositions that legitimate exercises of state power may place on

Page 7 -    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
DH2/ls8/97965020
Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

religious belief and practice." *Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet*, 512 U.S. 687, 705 (1994).

The First Amendment's establishment clause "prohibits the enactment of a law or official policy that 'establishes a religion or religious faith, or tends to do so.'" *Newdow v. Lefevre*, 598 F.3d 638, 643 (9th Cir. 2010) (quoting *Lynch v. Donnelly*, 465 U.S. 668, 678 (1984)). The clause applies to official condonement of a particular religion or religious belief, and to official disapproval or hostility towards religion. *Am. Family Ass'n, Inc. v. City and County of San Francisco*, 277 F.3d 1114, 1120-21 (9th Cir. 2002) (quotation marks and citations omitted).

Here, Chaplain Ball's conduct does not implicate the Establishment Clause. Rather, the uncontroverted evidence shows that Chaplain Ball attempted to locate an Imam or volunteer during his tenure, and collaborated with an Imam to ensure DRCI's Muslim AICs had access to the written Khutba. It also shows that Chaplain Ball facilitated the Jumu'ah prayer by directly supervising it, requesting that a non-Islamic volunteer supervise it in his absence, or—failing both—ensuring that DRCI's Muslim AICs had access to a written Khutba to conduct the prayer in their cells. And as to the areas where DRCI's Muslim AICs participated in the Jumu'ah prayer, it shows that Chaplain Ball directed the clerks to clean those areas the day before the weekly prayer. Such conduct does not evidence official disapproval or hostility towards religion, but rather a chaplain using the resources available to them to ensure DRCI's Muslim AICs maintained regular access to the Jumu'ah prayer.

### 2. Chaplain Ball did not infringe Plaintiff's First Amendment right to free exercise of religion.

Plaintiff alleges that Chaplain Ball violated his right to the free exercise of religion by failing to accommodate Jumu'ah prayer, failing to provide an Imam or volunteer to oversee the Jumu'ah prayer, and failing to provide a clean place for the Jumu'ah prayer. (Am. Compl., Dkt. #9, ¶¶ 37-40, 43).

In order to state a viable claim under the First Amendment's Free Exercise Clause, an AIC must show an infringement upon a sincerely-held belief that is rooted in religion. *Shakur v.*

Page 8 -    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
DH2/ls8/97965020
Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Schriro*, 514 F.3d 878, 884-85 (9th Cir 2008) (citing *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir 1994)). Under the *Shakur* standard, the belief need not be mandated or central to a faith, but it must be sincerely held and rooted in a religion in order to trigger the First Amendment. *Id.*

After an AIC has shown that he possesses a sincerely held belief, the AIC must next prove that the state infringed upon his belief, and that the justification for the state's infringement is not reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987). In making this determination, the court must balance the AIC's constitutionally protected right against the state's interests in efficiently operating its prisons. *Id.* at 89. Courts must impart considerable deference to the expertise of state prison officials when reviewing challenged regulations. *Id.* at 84-85.

Under *Turner*, there are four factors to consider when evaluating a challenged prison regulation: (a) whether there is a "'valid, rational connection' between the prison regulation and the legitimate government interest put forward to justify it"; (b) "whether there are alternative means of exercising the right that remain open to prison inmates"; (c) the effect that "accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (d) the presence or absence of ready alternatives that fully accommodate the AIC's rights at *de minimis* cost to the valid penological interests. *Id.* at 89-90.

### a. Rational Connection.

*Turner*'s first prong requires that there be a rational connection between the restriction and the legitimate governmental interest used to justify it. *Id.*

ODOC's rules requiring that religious services be overseen by a facility chaplain or approved volunteer only in approved areas within a facility further ODOC's interests in prison security by providing safe spaces where religious services may be supervised. If AICs were permitted to direct, lead, or conduct religious services for other AICs and to do so outside of approved areas, it could lead to dangerous power dynamics between AICs and/or AICs

Page 9 -    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
         DH2/ls8/97965020
                                    Department of Justice
                                    100 SW Market Street
                                    Portland, OR 97201
                                    (971) 673-1880 / Fax: (971) 673-5000

misrepresenting faith traditions. (Ball Decl., ¶ 9). If ODOC were to allow AICs to lead impromptu religious services anywhere within its institutions, such services might also infringe on the rights of other AICs in the area who do not want to be involved. (*Id.*). Thus, there is a rational connection between the applicable ODOC's rules and the legitimate governmental interest justifying them.

### b. Alternate Avenues.

*Turner*'s second prong looks to whether alternative avenues of exercising the right remain open to the AIC. *Turner*, 482 U.S. at 90. The relevant inquiry under *Turner*'s second prong is "not whether the inmate has an alternative means of engaging in the particular religious practice that he or she claims is being affected; rather, [it is] whether the inmates have been denied ***all means*** of religious expression." *Ward v. Walsh*, 1 F.3d 873, 878 (9th Cir 1993) (emphasis added) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 352 (1987)).

Here, Plaintiff was not denied all means of religious expression at any time while he was incarcerated at DRCI. When Chaplain Ball was available and/or there was a volunteer available to supervise the Jumu'ah prayer, DRCI's Muslic AICs—including Plaintiff—were provided an area to conduct the prayer. And in those rare cases where both Chaplain Ball and all volunteers were unavailable, Plaintiff maintained access to the written Khutba.

This case is similar to two recent federal cases in California: *Rhoden v. Dep't of State Hosps.*, Case No.: 1:18-cv-00101-NONE-SAB (PC), 2020 WL 5737019 (E.D. Cal. Mar 3, 2020) and *Austin v. Brown*, Case No.: 18cv0600-WQH (JLB), 2020 WL 5294490 (S.D. Cal. Sept 3, 2020). In *Rhoden*, an AIC claimed that his right to religious expression was infringed when his facility did not make staff available to supervise group religious services in his institution's chapel. 2020 WL 5737019 at *2. But the district court concluded that the denial of access to group religious services did not deprive the AIC of "all means" of exercising his religious beliefs, because he was able to pray on his unit, read his Bible, and discuss his faith with other AICs, and he could possess a Bible, prayer book, rosary, picture of Christ, and a crucifix. *Id.* at

Page 10 -   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
DH2/ls8/97965020

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*16. Likewise, in *Austin*, a Buddhist AIC complained that his institution infringed his right to religious expression because weekly Buddhist chapel services at his institution were sometimes cancelled when no staff or volunteers were available to oversee them. 2020 WL 5294490 at *1. The court found that the plaintiff had not presented evidence that he was "denied all means of religious expression" when services were cancelled, because "Plaintiff 'retained the ability to participate in other significant rituals and ceremonies of [his] faith.'" *Id.* at *11 (internal citation omitted).

Ultimately, the law does not require prison officials to provide every accommodation where "[t]he limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives." *O'Lone*, 482 U.S. at 348. Under *Turner*, "where 'other avenues' remain available for the for the exercise of the asserted right . . . courts should be conscious of the 'measure of judicial deference owed to corrections officials . . . in gauging the validity of the regulation.'" 482 U.S. at 90 (internal citation omitted).

Here, as in *Rhoden* and *Austin*, ODOC's rules did not deny Plaintiff all means of religious expression. Plaintiff had access to the written Khutba and could pray in his cell.

      **c.**    **Adverse Impact.**

The third *Turner* factor is whether accommodation of the right will have an adverse impact on guards, other AICs and prison resources generally. *Turner*, 482 U.S. at 90. "When accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Id.*

Here, permitting the AICs to gather together for group religious services—such as the Jumu'ah Prayer—in unapproved areas and without supervision would jeopardize institutional security and the rights of other AICs in the vicinity of such impromptu services for the reasons previously stated.

Page 11 -   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
         DH2/ls8/97965020
                                              Department of Justice
                                              100 SW Market Street
                                              Portland, OR 97201
                                         (971) 673-1880 / Fax: (971) 673-5000

### d.    Ready Alternatives.

The final *Turner* factor in assessing the reasonableness of a prison regulation is the absence of ready alternatives. In evaluating whether ready alternatives exist, "prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Turner*, 482 U.S. at 90-91. Prison officials do not bear the burden of disproving the availability of all alternatives to the alleged infringement because such an approach "fails to reflect the respect and deference that the United States Constitution allows for the judgment of prison administrators." *O'Lone*, 482 U.S. at 350.

Here, there are no ready alternatives to ODOC's rules requiring that religious services be conducted only by chaplains or approved volunteers only in approved spaces.

### 3.    Chaplain Ball did not infringe Plaintiff's Fourteenth Amendment right to equal protection.

Plaintiff alleges that Chaplain Ball violated his right to equal protection because he provided volunteers for practitioners of other religions and otherwise accommodated those practitioners, while not doing the same for those participating in the Jumu'ah prayer.

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).

Under the Equal Protection clause, prisons must provide each AIC with a "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Shakur*, 514 F.3d at 891 (quoting *Cruz v. Beto*, 405 U.S. 319, 322 (1972)). These opportunities need not be identical. *Cruz*, 405 U.S. at 322 n.2. Rather, prisons must make "good faith accommodation of the [AICs'] rights in light of practical considerations." *Allen v. Toombs*, 827 F.2d 563, 569 (9th Cir. 1987). Thus, to establish an equal protection violation, Plaintiff must show that Defendant intentionally discriminated against him on the basis of his religion by failing to provide him a reasonable opportunity to pursue his faith

Page 12 -   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
DH2/ls8/97965020

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

compared to other similarly situated religious groups. *Cruz*, 405 U.S. at 321-22; *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997) ("To succeed on an equal protection claim, a plaintiff in a section 1983 claim must show that officials intentionally acted in a discriminatory manner."), *abrogated on other grounds as stated in Shakur*, 514 F.3d at 884-85.

Chaplain Ball did not deny Plaintiff an opportunity to pursue his faith while he was incarcerated at DRCI. Rather, the uncontroverted evidence shows that Chaplain Ball made a good faith effort to facilitate the Jumu'ah prayer as often as possible. If he was available, he personally supervised the Jumu'ah prayer. If he was not available, he asked a non-Islamic volunteer to supervise the Jumu'ah prayer. If no volunteer was available, he corresponded with an Imam to obtain a written Khutba, and then ensured it was delivered to the Muslim AICs at DRCI for individual prayer. And as to the areas where DRCI's Muslim AICs participated in the Jumu'ah prayer, the uncontroverted evidence shows that Chaplain Ball directed the clerks to clean those areas the day before the weekly prayer.

That Chaplain Ball was unable to find a full-time volunteer to supervise the Jumu'ah prayer—but may have been able to locate a volunteer to supervise other religious groups in their practices—reflects the resources available to a prison chaplain in Eastern Oregon, not intentional discrimination.

### D. Chaplain Ball is entitled to qualified immunity from damages.

Chaplain Ball is entitled to qualified immunity, which shields government officials from liability for damages when they make decisions that, even if constitutionally deficient, reasonably misapprehend the law governing the circumstances they confronted. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *Saucier v. Katz*, 533 U.S. 194, 206 (2001).

An official should be denied qualified immunity only when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Qualified immunity is immunity from suit, not merely a defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Like

Page 13 -   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
         DH2/ls8/97965020
                                         Department of Justice
                                         100 SW Market Street
                                         Portland, OR 97201
                                    (971) 673-1880 / Fax: (971) 673-5000

absolute immunity, qualified immunity is effectively lost if a case is erroneously permitted to go to trial. *Id.* Consequently, the Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam); *Saucier*, 533 U.S. at 201.

To determine whether an individual is entitled to qualified immunity, the first relevant inquiry is whether the official violated the plaintiff's constitutional rights. *Saucier*, 533 U.S. at 201. The second relevant question is whether the law governing that right is clearly established. *Id*. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

The Supreme Court has explained that although courts *may* apply these questions in order, courts have the discretion to determine "whether that procedure is worthwhile." *Pearson v. Callahan*, 555 U.S. 223, 242 (2009) ("[J]udges . . . are in the best position to determine the order of decision making."). Courts may end the inquiry if either question is answered affirmatively. *Id.* at 236. For example, a court extended qualified immunity to a government official who did exactly as she was required under the administrative rules, which she did not draft, in *Neely v. Feinstein*, 50 F.3d 1502, 1511 (9th Cir. 1995).

Regardless of whether this Court decides to use one or both *Saucier* steps, Chaplain Ball is entitled to qualified immunity. No constitutional violation occurred here, but even if the Court concludes that a violation did occur, the right was not clearly established.

No constitutional violation occurred because ODOC's rules requiring that religious services be conducted only by chaplains or approved volunteers and only in approved spaces pass constitutional muster under *Turner*, and plaintiffs were not denied all means of religious expression.

It is not clearly established in the case law that providing AICs with a written sermon to follow in their cells on those days when the chaplain or an approved volunteer is unavailable to

Page 14 -   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
            DH2/ls8/97965020
                                    Department of Justice
                                    100 SW Market Street
                                    Portland, OR 97201
                                    (971) 673-1880 / Fax: (971) 673-5000

lead a congregate service would violate Plaintiff's rights. To the contrary, the case law suggests that such a course is *Turner* compliant. See, e.g., *Rhoden v. Dep't of State Hosp.s*, Case No.: 1:18-cv-00101-NONE-SAB (PC), 2020 WL 5737019 (E.D. Cal. Mar 3, 2020); *Austin v. Brown*, Case No.: 18cv0600-WQH (JLB), 2020 WL 5294490 (S.D. Cal. Sept 3, 2020).

In addition, Chaplain Ball is entitled to qualified immunity because his actions comported with the administrative rules, which he himself did not draft. *Neely*, 50 F.3d at 1511; see also, e.g., *Hansen v. Cal. Dep't of Corr.s*, 920 F. Supp. 1480, 1485 (N.D. Cal. 1996) (noting that "[a]n officer who is following a statute or administrative rule should generally be accorded qualified immunity for his actions unless a reasonable officer should have known that the law or rule in question was unconstitutional." (citation omitted)).

Given the case law—along with the Oregon Administrative Rules and DRCI's housing unit guidelines—it would not have been apparent to Chaplain Ball that accommodating Muslim AICs on days that the chapel was closed with a written Khutba for use in their cells would violate their constitutional rights.

Accordingly, even if Chaplain Ball violated Plaintiff's constitutional rights, qualified immunity shields him from damages.

### E. Plaintiff has not alleged sufficient facts to support the damages he seeks in his Amended Complaint.

Plaintiff requests compensatory and punitive damages in his Amended Complaint (Am. Compl., Dkt. #9, pp. 22-23), but he cannot recover either category of damages in this lawsuit.

#### 1. Plaintiff's request for compensatory damages is barred by 42 U.S.C. § 1997e(e).

Plaintiff cannot recover compensatory damages because he has not alleged a physical injury. Under § 1997e(e) of the Prison Litigation Reform Act (PLRA), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e).

Page 15 -   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
DH2/ls8/97965020
Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

This provision of the PLRA is in keeping with the United States Supreme Court's clear guidance that damages cannot compensate for the abstract value of constitutional rights. In *Carey v. Piphus*, the Court held that it was error for the appellate court to conclude that the respondents were entitled to recover "damages to compensate them for the injury which is inherent in the nature of the wrong . . . even if they fail to prove that the denial of procedural due process actually caused them some real, if intangible, injury." 435 U.S. 247, 261 (1978) (citation omitted) (internal quotation marks omitted). That Court later remarked that "*Carey* … makes clear that the abstract value of a constitutional right may not form the basis for § 1983 damages." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986). Rather, the appropriate award of damages in such an instance is nominal damages. *Id.* at 308 n. 11.

Despite the Supreme Court's clear guidance, the Ninth Circuit muddied the waters when confronted with a § 1997e(e) argument in *Oliver v. Keller*, 289 F.3d 623 (9th Cir. 2002). In *Oliver*, the Ninth Circuit attempted to distinguish between claims based on emotional or mental distress and claimed based on constitutional violations, asserting that § 1997e(e) applied to the former, but not the latter. *Id.* at 629-30. District courts in this circuit have not found this distinction an easy one to apply, leading one district judge to note that *Oliver* is "hardly a model of clarity[.]" *Cockcroft v. Kirkland*, 548 F. Supp. 767, 776 (N.D. Cal. 2008).

Since *Oliver*, several district judges have concluded that compensatory damages are unavailable in the absence of a physical injury. *See Quinn v. Singh*, No. 11-CV-1085-DMS (JMA), 2012 WL 3868014, at *4 (S.D. Cal. July 27, 2012) (no compensatory damages available where the plaintiff alleged he was "attacked physically, brutally," but did not allege any physical injury); *Preayer v. Ryan*, No. CV-15-00069-PHX-DGC, 2017 WL 2351601, at *1-2 (D. Ariz. May 31, 2017) (holding that the plaintiff may only seek compensation for pain and suffering if he suffered a physical injury); *Colvin v. Sanchez*, No. 14-CV-05400-LB, 2020 WL 1450555, at *7 (N.D. Cal. Mar. 25, 2020) (rejecting the plaintiff's argument that he is entitled to damages for mental and emotional distress, even without physical injury). These decisions are in keeping

Page 16 -   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
        DH2/ls8/97965020
                                    Department of Justice
                                    100 SW Market Street
                                    Portland, OR 97201
                                (971) 673-1880 / Fax: (971) 673-5000

with decisions from several sister circuits. *See, e.g., Thompson v. Carter*, 284 F.3d 411, 418 (2d Cir. 2002); *Allah v. Al-Hafeez*, 226 F.3d 247, 250-51 (3d Cir. 2000); *Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir. 2007); *Calhoun v. De Tella*, 319 F.3d 936, 941 (7th Cir. 2003); *Royal v. Kautzky*, 375 F.3d 720, 723-24 (8th Cir. 2004); *Searles v. Van Bebber*, 251 F.3d 869, 878-79 (10th Cir. 2001).

Defendant urges this Court to adopt the approach followed in the above cases. Applying that approach here, Plaintiff is proscribed from recovering any compensatory damages in this lawsuit because he has failed to allege a physical injury.

### 2. Plaintiff's allegations do not support an award of punitive damages.

Nor can Plaintiff recover punitive damages against Defendant. Plaintiff has sued Defendant in both his individual and official capacities, but punitive damages under § 1983 are only recoverable against officials sued in their individual capacity. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Smith v. Wade*, 461 U.S. 30 (1983). And punitive damages may only be awarded when the defendant's conduct is shown to be motivated by evil intent or where it involves reckless or callous indifference to federally protected rights of others. *Smith*, 461 U.S. at 56.

Here, Plaintiff states that he is entitled to punitive damages to "deter unconstitutional action," (Am. Compl., Dkt. #9, p. 23), but does not make any allegation that Defendant acted with evil intent or motive. Accordingly, Plaintiff cannot recover punitive damages against Defendant.

## IV. Conclusion.

Plaintiff's claims for declaratory and injunctive relief are mooted by his release from prison (as is his RLUIPA claim), Chaplain Ball did not infringe Plaintiff's constitutional rights, Chaplain Ball is entitled to qualified immunity, and Plaintiff has not alleged sufficient facts to support the damages he seeks in his Amended Complaint.

Page 17 - DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
DH2/ls8/97965020
Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

For those reasons, Chaplain Ball is entitled to summary judgment and the Court should enter judgment in his favor.

DATED January  13 , 2025.

                                            Respectfully submitted,

                                            ELLEN F. ROSENBLUM
                                            Attorney General

                                            *s/ Dylan Hallman*
                                            DYLAN HALLMAN #173679
                                            Senior Assistant Attorney General
                                            Trial Attorney
                                            Tel (503) 947-4700
                                            Fax (503) 947-4791
                                            dylan.hallman@doj.oregon.gov
                                            Of Attorneys for Defendant

Page 18 -   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
        DH2/ls8/97965020
                                      Department of Justice
                                        100 SW Market Street
                                        Portland, OR 97201
                               (971) 673-1880 / Fax: (971) 673-5000

## CERTIFICATE OF SERVICE

      I certify that on January __13__, 2025, I served the foregoing DEFENDANT'S MOTION FOR SUMMARY JUDGMENT upon the parties hereto by the method indicated below, and addressed to the following:

| | |
|---|---|
| Hamza Mohammed Jama<br>8952 N. Fiske Ave<br>Portland, OR 97203<br><br>    *Pro Se Plaintiff* | ___ HAND DELIVERY<br>_X_ **MAIL DELIVERY**<br>___ OVERNIGHT MAIL<br>___ TELECOPY (FAX)<br>___ E-MAIL<br>___ E-SERVE |

                              *s/ Dylan Hallman*
                              DYLAN HALLMAN #173679
                              Senior Assistant Attorney General
                              Trial Attorney
                              Tel (971) 673-1880
                              Fax (971) 673-5000
                              dylan.hallman@doj.oregon.gov
                              Of Attorneys for Defendant

Page 1 -   CERTIFICATE OF SERVICE
        DH2/ls8/937768178
Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000