UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| HAMZA MOHAMMED JAMA, | Case No. 3:23-cv-01699-MC |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| KENNETH BALL, Chaplain, | |
| Defendant. | |

_____

MCSHANE, Chief Judge.

Plaintiff, a former adult in custody (AIC) with the Oregon Department of Corrections (ODOC), filed this action pursuant to 42 U.S.C. § 1983 and alleged that Chaplain Ball failed to accommodate Plaintiff's religious beliefs while Plaintiff was housed at the Deer Ridge Correctional Institution (DRCI). Chaplain Ball now moves for summary judgment on grounds that he did not discriminate against or burden Plaintiff's religious practices and, alternatively, that he is entitled to qualified immunity. For the reasons explained below, Chaplain Ball's motion is GRANTED.

1  -   **OPINION AND ORDER**

## BACKGROUND

From March 31, 2021 through November 30, 2023, Plaintiff was housed at DRCI, where Chaplain Ball was the sole chaplain. Ball Decl. ¶ 12. Per ODOC rules, the chaplain is "responsible for coordination and facilitation of inmate religious activities." Or. Admin. R. 291-143-0070(1).

Jumu'ah prayer is part of the Islamic faith tradition and is prayed every Friday afternoon. Ball Decl. ¶ 11. During Chaplain Ball's tenure, the Jumu'ah prayer at DRCI was held in the Chapel or Room N123 on Friday afternoons from 11:45 a.m. to 1:00 p.m.. *Id.* ¶¶ 12, 19. Every Thursday, Chaplain Ball directed Religious Services clerks to vacuum the carpet and disinfect all hard surfaces in the Chapel and to sweep and mop the linoleum floor in Room N123 to ensure that AICs participating in the Jumu'ah prayer would not defile their prayer rugs. *Id.* ¶¶ 20, 21.

Chaplain Ball tried to find an Imam or other suitable volunteer to lead Jumu'ah prayer services, and he was unable to find a willing volunteer. *Id.* ¶ 14. Instead, Chaplain Ball sought the guidance of a volunteer at the Oregon State Penitentiary, Imam Mohammed Salem Siala. Imam Siala provided Chaplain Ball with the text of the Jumu'ah prayer, called Khutba, and Chaplain Ball printed and provided the Khutba to AICs attending Jumu'ah prayer services. *Id.*

Chaplain Ball directly supervised the Jumu'ah prayer when he was available. *Id.* ¶ 15. When he was unavailable, Chaplain Ball asked one of the non-Islamic volunteers to supervise the Jumu'ah prayer. *Id.* When he and volunteers were unavailable, Chaplain Ball canceled the group prayer and had the Khutba delivered to Muslim AICs for individual prayer in their cells. *Id.* Chaplain Ball consulted with Imam Siala regarding this accommodation, and Imam Siala advised Chaplain Ball that "providing an AIC with the Khutba to read and pray individually in

2   -   OPINION AND ORDER

their cell was an acceptable arrangement." *Id.* ¶ 16. According to Chaplain Ball, it was uncommon that Jumu'ah prayer was canceled. *Id.* ¶ 17.

Chaplain Ball did not ask an AIC to lead the Jumu'ah prayer because ODOC rules prohibit AICs from directing, leading, or conducting religious activities. Or. Admin. R. 291-143-0070(5). Instead, if the chaplain or an approved volunteer is not available, the chaplain may "invite a qualified individual from the community to conduct the religious activity as a religious volunteer" or coordinate "with a religious representative to provide when possible alternative means for the conduct of the requested activity." *Id.* 291-143-0070(4)(a),(b).

## DISCUSSION

Plaintiff alleges that Chaplain Ball failed to provide a sufficiently clean area for Jumu'ah prayer services and frequently canceled the prayer due to the lack of volunteers. Plaintiff maintains that Chaplain Ball provided volunteers and accommodations for other religions and discriminated against Plaintiff and other Muslim AICs by failing to facilitate Jumu'ah prayer. Based on these allegations, Plaintiff brings claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA), the Establishment and Free Exercise Clauses of the First Amendment, and the Equal Protection Clause of the Fourteenth Amendment. Chaplain Ball moves for summary judgment on all claims.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). As the moving party, Chaplain Ball must present evidence of record, together with affidavits, if any, to demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If Chaplain Ball meets this burden, the burden shifts to Plaintiff to demonstrate the existence of a genuine issue of fact for trial.

3  -    OPINION AND ORDER

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see* Fed. R. Civ. P. 56(c)(1).

The Court must construe the evidence and all reasonable inferences in favor of Plaintiff, the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986). The Court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec*, 475 U.S. at 587 (citation and quotation marks omitted).

    A.  <u>RLUIPA and Injunctive Relief Claims</u>

Chaplain Ball argues that Plaintiff's RLUIPA claim and other claims for injunctive relief are now moot because Plaintiff is no longer housed at DRCI.

Generally, an AIC released from custody can no longer pursue injunctive relief. *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). "Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim." *Id.* (citation omitted). Further, RLUIPA does not authorize suits for damages against an official in an individual or official capacity and allows only injunctive relief. *Id.; Wood v. Yordy,* 753 F.3d 899, 904 (9th Cir. 2014) (finding that "there is nothing in the language or structure of RLUIPA to suggest that Congress contemplated liability of government employees in an individual capacity"); *Holley v. Cal. Dep't of Corr.,* 599 F.3d 1108, 1114 (9th Cir. 2010) (holding that "the Eleventh Amendment bars Holley's suit for official-capacity damages under RLUIPA").

4  -      **OPINION AND ORDER**

Plaintiff was housed at DRCI from March 31, 2021 through November 30, 2023, and he was released from ODOC custody on January 3, 2025. Melendez Decl. Ex. 1 at 1. Plaintiff's release renders his claims for injunctive relief moot, and summary judgment is granted on Plaintiff's RLUIPA claim.

B. First and Fourteenth Amendment Claims

Pursuant to § 1983, Plaintiff asserts claims for damages under the Establishment and Free Exercise Clauses of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.

1. Establishment Clause

Under the Establishment Clause, the government "may not promote or affiliate itself with any religious doctrine or organization, may not discriminate among persons on the basis of their religious beliefs and practices, may not delegate a governmental power to a religious institution, and may not involve itself too deeply in such an institution's affairs." *County of Allegheny v. American Civil Liberties Union,* 492 U.S. 573, 590-91 (1989) (footnotes omitted). "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982). At the same time, the Establishment Clause does not require prison officials to provide identical worship opportunities for every religious sect or group. *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972) (per curiam) (disavowing the notion "that that every religious sect or group within a prison – however few in number – must have identical facilities or personnel"). Rather, "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendment without fear of penalty." *Id.*

5 -    OPINION AND ORDER

Plaintiff did not respond to Chaplain Ball's motion or present evidence suggesting that Chaplain Ball favored other religions and discriminated against Muslim AICs. The uncontroverted evidence shows that Chaplain Ball attempted to locate an Imam or other appropriate volunteer during his tenure, and that he collaborated with Imam Siala to ensure that Muslim AICs had access to the written Khutba when no one was available to supervise Jumu'ah prayer services. Chaplain Ball also directed clerks to clean the Chapel or Room N123 the day before the weekly Jumu'ah prayer.

Accordingly, based on this record, Plaintiff cannot sustain a claim under the Establishment Clause and summary judgment is appropriate.

    2. <u>Free Exercise Clause</u>

The Free Exercise Clause prohibits prison officials from burdening an AIC's free exercise of religion absent a justification reasonably related to a legitimate penological interest. *See Shakur v. Schiro*, 514 F.3d 878, 884 (9th Cir. 2008); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987). To constitute an impermissible burden, the government's conduct must do more than "inconvenience" a religious exercise; it "must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jones*, 791 F.3d at 1031-32 (citations omitted). To determine whether an infringing practice is reasonably related to a legitimate penological interest, the Court must consider: 1) whether there is a "valid, rational connection" between the regulation and the asserted legitimate interest; 2) whether alternative means of exercising the religious belief are available; 3) the effect that the requested accommodation would have on the prison community and the allocation of prison resources; and 4) whether there are "ready alternatives" to accommodate an AIC's rights. *Turner*, 482 U.S. at 89-90.

6   -   **OPINION AND ORDER**

Plaintiff presents no evidence suggesting that Chaplain Ball's conduct substantially burdened the exercise of his religion. For example, Plaintiff fails to establish how often Jumu'ah prayer services were canceled or how the cleanliness of prayer areas affected his religious practices. Moreover, Chaplain Ball accommodated Plaintiff's requests for a prayer room and provided the written Khutba when a volunteer was not available. Plaintiff's free exercise claim fails on this basis alone.

The *Turner* test also defeats against Plaintiff's claim. Chaplain Ball unsuccessfully attempted to recruit a volunteer for Jumu'ah prayer services and ODOC regulations forbid Plaintiff or another AIC from conducting or supervising the prayer. According to Chaplain Ball, "uneven power dynamics and social hierarchies could develop that could put AICs at risk" if an AIC was permitted to lead other AICs in religious services. Ball Decl. ¶ 9. Courts have upheld similar concerns as legitimate penological interests and the ODOC regulation is rationally related to that interest. *See, e.g., O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353 (1987); *Hadi v. Horn*, 830 F.2d 779, 784 (7th Cir. 1987).

Further, alternative means of free exercise were available to Plaintiff through distribution of the written Khutba and individual prayer, and allowing AICs to supervise Jumu'ah services could negatively impact the prison community, as Chaplain Ball explained. *Austin v. Brown*, 2020 WL 5294490, at *10-11 (S.D. Cal. Sept 3, 2020) (rejecting free exercise claim arising from the cancelation of weekly Buddhist chapel services when no staff or volunteers were available, because the plaintiff "retained the ability to participate in other significant rituals and ceremonies"); *Rhoden v. Dep't of State Hosps.*, 2020 WL 5737019, at *16 (E.D. Cal. Mar 3, 2020) (concluding that the denial of group religious services did not deprive an AIC of "all means" of exercising his religious beliefs when the AIC could pray in his unit, read his Bible,

7  -   **OPINION AND ORDER**

and discuss his faith with other AICs); Ball Decl. ¶ 9. Finally, no other alternative existed to accommodate Jumu'ah prayer services, given that Chaplain Ball could not find a suitable and willing volunteer.

In sum, Plaintiff fails to establish a substantial burden on the practice of his religion unrelated to a legitimate penological interest, and summary judgment is granted on Plaintiff's free exercise claim.

### 3. Equal Protection Clause

Under the Equal Protection Clause, prison officials must provide an AIC with a "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Shakur*, 514 F.3d at 891 (quoting *Cruz*, 405 U.S. at 322). However, these opportunities need not be identical; rather, prisons must make "good faith accommodation of the prisoner's rights in light of practical considerations." *Allen v. Toombs*, 827 F.2d 563, 569 (9th Cir. 1987). To sustain an equal protection claim, Plaintiff must show that Chaplain Ball intentionally discriminated against him on the basis of his religion by failing to provide a reasonable opportunity to pursue his faith compared to other similarly situated religious groups. *Cruz*, 405 U.S. at 321-22.

Plaintiff presents no evidence to support the assertion that Chaplain Ball provided volunteers for other religions while ignoring the religious needs of Muslim AICs. The uncontroverted evidence shows that Chaplain Ball facilitated the Jumu'ah prayer by personally supervising or asking a volunteer to supervise the prayer and by directing Religious Services clerks to clean the Chapel and Room N123 the day before the weekly prayer. Chaplain Ball also corresponded with an Imam to obtain a written Khutba and ensured that it was delivered to Muslim AICs. Although Chaplain Ball was unable to find a volunteer for Jumu'ah prayer

8   -   OPINION AND ORDER

services, no evidence suggests that he failed to do so because of intentional discrimination as opposed to the limited resources available in central Oregon. Accordingly, summary judgment is granted on Plaintiff's equal protection claim.

   4. Qualified Immunity

Even if Plaintiff raises a genuine issue of fact as to whether Chaplain Ball impermissibly burdened or discriminated against Plaintiff's religious beliefs, Chaplain Ball is entitled to qualified immunity.

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly,* 580 U.S. 73, 78-79 (2017) (per curiam). The asserted right "must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards,* 566 U.S. 658, 664 (2012) (brackets and internal quotation marks omitted). While qualified immunity does not require "a case directly on point, [] existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Based on the evidence presented, a reasonable prison official in Chaplain Ball's position would not have known that his conduct violated Plaintiff's clearly established First or Fourteenth Amendment rights. Chaplain Ball consulted with Imam Siala and was assured that providing the written Khutba was sufficient when an approved volunteer was not available for Jumu'ah prayer. Moreover, it is not clearly established that an AIC's constitutional rights are violated when prison officials cancel religious services due to the unavailability of chaplains or volunteer religious leaders. *See, e.g., Hadi*, 830 F.2d at 786-87 (finding that the cancelation of Jumu'ah prayer services in the absence of a volunteer Imam did not violate the Free Exercise Clause);

*Walker v. Dart*, 2010 WL 3307079, at* 10-12 (N.D. Ill. Aug. 19, 2010) (rejecting free exercise claim based on the cancelation of Muslim prayer services for nine months due to the lack of outside volunteers); *see also Woods v. Staton*, No. 3:15-CV-02169-PK, 2017 WL 3623835, at *8 (D. Or. June 2, 2017) (finding that the defendants did not violate RLUIPA by canceling Friday prayers when no volunteer imam was available), *report and recommendation adopted,* 2017 WL 3623797 (D. Or. Aug. 23, 2017), *aff'd*, 715 Fed. App'x 768 (9th Cir. 2018).

Thus, Chaplain Ball is entitled to qualified immunity and summary judgment is granted on this alternative ground.

## CONCLUSION

Defendant's Motion for Summary Judgment (ECF No. 79) is GRANTED and this action is DISMISSED. Any appeal of this Order or Judgment dismissing this action would be frivolous or not taken in good faith and Plaintiff's IFP statue is REVOKED.

IT IS SO ORDERED.

DATED this 30th day of September, 2025.

                                          s/Michael J. McShane
                                         MICHAEL J. MCSHANE
                                         United States District Judge